and we'll move on to the last case of the day which is number 20-10485 Ziyadat versus Diamondrock we have Mr. Rodolphe for the appellant and you may begin when you're ready Mr. Rodolphe. Thank you Judge Pryor. Good morning Your Honors. May it please the court. Yigas Korode on behalf of appellant Rami Ziyadat. Reading the district court's order one could easily be forgiven in assuming that this was an appeal in a summary judgment motion. However, we're not. We're on a motion to dismiss under 12b-6 and I want to get to that later. Judge Pryor, yesterday during argument with Beach Blitzworth City of Miami Beach, Your Honor commented that maybe the district judge had applied the summary judgment standard on a motion to dismiss and that's exactly what we have here. However, before we get into that there's a threshold issue that I want to address and that is whether cat's paw actually applies in a but-for causation case. Interestingly enough, the appellee says it's clear-cut in the 11th circuit that a cat's paw is inappropriate and not allowed in a but-for causation case and appellant says no it is and it's confusing because it should be a clear-cut rule. It gets even more confusing because the author of Sims who we're going to address shortly then went on to write other opinions and Judge Newsom and Judge Marcus also recently addressed cat's paw in a but-for causation so I want to spend some time clarifying that and let me just from the get-go let me explain why it's a threshold issue because without cat's paw, frankly we have no case, right? We're not in any way asserting that the Weston as a hotel harbored racial animus against my client because he's an Arab. We're not arguing that anybody other than the towel, Judy, harbored as racial animus and the transferred over to the manager who was the decision maker and that's what the cat's paw theory is about and interestingly enough even though appellee asserts that 11th circuit this is clear law, later on when different panels in unpublished opinions candidly referred to this they never used the word held. It always indicated and that's part of what we're going to get into. Before I get into that I just want to comment that this issue was never raised below by appellee. It was never addressed by the lower court. In fact in the motion to dismiss in doc 25 there's only one mention of cat's paw. In my response to the file doc 26 there was an entire section, section f dedicated to cat's paw yet in doc 27 the reply brief cat's paw is not even mentioned a single time. It wasn't this but-for causation standard was not raised on at oral argument which was raised by the lower court. However, can I ask you just a quick question and I'm sure I don't understand cat's paw or the terminology as well as I should but you said earlier you said without cat's paw we don't have a case and I'm just wondering why that is. I mean why can't we just sort of do the causation analysis without sort of slapping this cat's paw label on it. Why can't we just ask if in fact the towel attendance is for discrimination was the but-for cause of the eviction. Your honor that's exactly what I'm going to ask the court to do and that's exactly the point and that's what sims that's what sims did and and let me get right to that point. The wrinkle here is that subsequent to the lower court's ruling and before the appeal was filed the supreme court of the United States ruled in the Comcast case the 1981 actions are governed by a but-for standard. I actually argued in the lower court the court should adopt the motivating factor and that came up in the oral argument but subsequent to that so the point is that the causation issue is more nuanced because of that but-for causation which is why the cat's paw but my point is that the cat's paw it's just that it's just a vehicle to transfer the animus over from what if you'd be more advised the problem is it seems to me we've caused more trouble by using cat's paw language. The question here is a question of vicarious liability and maybe it would be better to frame it that way. You still are obliged to stay the claim showing but-for causation. How do you do that here? Okay tell us why the complaint is sufficient to impute if you will the purported discriminatory animus on the part of the tower attendant to Mung or the decision maker who threw these folks out of the hotel. Judge Marcus the entire court's opinion really the factual element of it comes down to two lines and that's on page eight and those two facts that the court seems to base his opinion on are nowhere to be found in the second amended complaint. They certainly don't give the inference to the non-moving party and specifically on page eight the court stated rather plaintiff alleges facts that contradict plaintiff's cat's paw theory. Plaintiff alleges that after the incident occurred at the pool Mung did not at any time consult with Judy. So what the court was saying and harped on this in oral argument was that how could there be this correlation if Mung never spoke with Judy and the court just stated that Mung did not at any time consult with Judy. However paragraph 42 of the second amended complaint specifically states Robert was just parroting what he had heard from Judy either independently or through Rainier Valdez who was the security guard. So the second amended complaint specifically raised the option that there was a direct communication. Now of course cognizant of rule 11 as a draft of the complaint I couldn't allege that that happened because we simply didn't know. Also the posture here is a little bit different in a sense that we had very limited discovery and in response to the court's footnote the reason why they changed was because we did receive a very small video that showed what happened so of course it changed the perspective. But the court just just stated that Mung did not at any time consult with Judy when that is not found in the second amendment complaint and any inference from paragraph 42 should be well so also I mean I guess a follow-up question is that fatal? I mean like the towel attendant speaks to security and security speaks to the hotel manager and you know if you can prove your facts you've got but-for-causation. Agreed the court the lower court and this is where I think the court or the lower court seemed to say that if there wasn't this direct link between Judy and the manager then we couldn't prove but-for-causation and in my briefing I cited to numerous cases where Lum Palace is a big one that came up where you don't even need the recommendation if the if the decision maker makes an opinion based on even a report where it's not even a recommendation in numerous cases I cited to the briefing. So where Judy here made the recommendation and here's the point the point is that this we should be back here on summary judgment or most likely this case is resolved once we have the facts either there was a basis either my client vomited in the pool or which which I which as I pointed out the lower court would raise objective procedures sanitary procedures in a major hotel in Fort Lauderdale Beach if someone vomits in the pool those are easily objective facts and when and in the in the second amendment complaint I repeatedly alleged that my client kept asking what did we do wrong and all all we had to say was you know well the response would be an affirmative defense you know there was a vomit in the pool acting appropriately and and my point is this is a real question of fact the the appellee defendant lower court referred to Florida statute 509.142 five times and their whole point was that my client's acting appropriately that may very well be true I don't know I wasn't there but what I do know is that the lower court was constrained to the four corners of the complaint went way outside and the second the second line I want to get to is also on page eight the next sentence and this has to do with with the breaking of this independent investigation security guards after obtaining Judy's version of the incident and after the guards have been dispatched to observe plaintiff at the pool reported back to Munn again that is nowhere in the second amendment complaint paragraph 27 states that Judy that Judy stated that my client said to Judy you know why why would you say I don't look like I belong here and Judy just recalled this the security before my then after that my client went to speak to Munn someone could not have dispatched security as the court found and again that was the court's basis for saying there was an independent investigation uh what clearly in the order makes it seem dispatched to observe plaintiff at the pool was an independent investigation therefore the the Munn decided based on what the security guards had had investigated to to throw my clients out that is nowhere to be found in the second amendment complaint and even if it was any inference should be given to to the appellant not to the appellee so uh my time is I just want to point out um that uh you're on as far as as far as a judge judge news and um I cited to the uh to the lower to uh Georgia case which which um your honor about three years ago came out on a on a but for case and and held that um you know an actual reverse summary judgment almost every case on cat's paw is on summary judgment I I surveyed almost every single case 11 circuit I stayed in my brief over 75 there's not one in 1981 I and and with that I'll reserve the rest of my time in rebuttal thank you Mr. Andrews thank you your honor good morning Forrest Andrews on behalf of the appellee the district court's order in this case which the appellant accuses the district court of going outside the four corners of the second amendment complaint and it did no such thing all of the facts that are in the the order come directly from the second amendment complaint which do not give rise to a claim of discrimination under section 1981 we have to remember that section 1981 is meant to address discrimination in the right to contract the appellant was not denied any right in his right to contract or enforce the contract because of what the pool attendant did or said because that wasn't communicated directly to the the manager who made the ultimate decision so there's two things here one there is no intentional discrimination which I think the appellant is uh is conceding and the district court below didn't find so now the fallback is the cat's paw theory and the cat's paw theory under the sims precedent which is precedent and it's binding upon this court has held that cat's paw does not apply to but for statutes in that case so let me ask you this that's just not how I read sims I mean I read sims to say um that even in a but-for scenario you just ask whether the lower level employees animus was a but-for cause of or determinative influence on the decision maker's ultimate decision and this is why I wonder if we're just complicating things by slapping this cat's paw layer uh label on this thing it's just a but-for test I mean was the towel attendance discrimination a but-for uh you know sort of cause through some chain of through some chain that the plaintiff can prove um of the ultimate eviction maybe maybe not but that just sounds like a factual question and it's not and the reason why it's not a factual question in this case is because the plaintiff has provided us with the facts to analyze and so even if you look at the facts in the light most favorable to the plaintiff they don't arise to a claim of discrimination all we have is a a towel attendant who looks at him and questions what are you doing here you don't look like you belong here that didn't interfere with his right to be there in the hotel she didn't kick him out she didn't kick him out of the pool she didn't deny him water which he was over there to get so he wasn't there was no adverse action because of that conduct so they have to rely on cat's paw in order to try to impose whatever alleged animus that the towel attendant had onto the unbiased decision maker and we know that he's not biased and that race had nothing to do with the eviction decision because it's obvious according to the complaint that the appellant is arab it was apparent to the the manager when he's interacting with him face to face and there's no claims of any hostility towards him in fact he's treated very favorably by saying here go back and enjoy the pool here's some vouchers and then he's going to go and speak with judy and get her version of the story so if cat's paw applies right there we have the investigation that part of cat's paw is satisfied if it does apply in this case the appellant argues in conclusory fashion which is what the district court found that there was no investigation but what the appellant is really saying is that there wasn't an investigation that they were satisfied with obviously they don't agree with the the outcome of that investigation but that doesn't detract from the fact that there was an investigation then so hold on so where if they allege on the face of the complaint that there was no investigation and we are limited to the four corners of the complaint where on the complaint does it suggest that in fact there wasn't yeah uh well the first the uh allegation that there was known as conclusory as the district court found and then we have the facts in the complaint that uh the the security uh guard spoke to the pool attendant that's at paragraph 30 uh 33 and reported back to the manager we have the appellant and his so all of those give rise to a plausible inference that there was an investigation that the manager knew what was going on knew about the complaint specifically that it was that there was some type of racial component to the complaint acted favorably to the appellant didn't uh side with the pool attendant so it doesn't so even though he was aware of what the complaint was there's no allegation or inference that he was of the towel attendant so that's the problem with this complaint and you know the point i read that how do i read that council consistent with what is pled in paragraph 42 paragraph 42 of the second amended claim complaint says robert was just parroting what he had heard from judy either independently or through rainier valdez i have to take the complaint as being true for the purposes of this motion to dismiss yes and i agree how am i supposed to read paragraph 42 in light of what you just said you can read it as being a conclusory assertion in light of the other facts that are there that i that i mentioned before where the manager is speaking with the uh with the appellant with his girlfriend and then gets the report back from the security guard that's an investigation so whether uh the manager went out there himself or is parroting however the appellant says it there's an investigation there let me just change it a little bit assume for the purposes of my question that the pool towel attendant was animated by discriminatory feelings that she had toward ours let's just assume that two she goes directly to mun the decision maker and speaks to the decision maker and tells the decision maker these people were involved in misconduct in the pool three mon speaks to these folks who were thrown out of the hotel and they deny all of that suppose that's what the complaint said in hyperbole all of that could you properly dismiss for failure to state a claim at this stage that yes you could yes yeah i don't think that that rises to the level of a claim of discrimination under 1982 um an investigation is just that whether as long as the decision maker is uh doing what is an independent investigation the court should give you see there is the rough the the the qualifier an independent investigation this complaint pleads no such thing in fact it asserts quite the opposite maybe you're right maybe there was an independent investigation but how do i know that at the front end all i have is what's asserted in the complaint and it says quite the contrary well if you look at the yempas case which counsel mentioned and were there they they found that there was an independent investigation i think this case presents even clearer facts that there was an independent investigation which all it means is that rather than just hearing what the alleged biased person has to say and going with that the person is trying to get the information for themselves there's nothing wrong and i think it's expected that in this situation the manager is going to talk to both parties that are involved the appellant who believes that he's discriminated against and the employee who is allegedly doing the discrimination and then making the decision what about this mr andrews what about this allegation rami and taylor repeatedly asked robert what they had done inappropriately or in violation of hotel policy but robert simply had no idea and could not tell them well i think again that's conclusory and it's contradicted by earlier allegations it's an allegation of fact yeah but it's contradicted conclusion it's contradicted by the other allegations which the security guard reported back that they were engaging in improper behaviors such as throwing up in the pool so those two they're just inconsistent with each other and they don't give it any reasonable inference of of discrimination or that there wasn't an independent investigation so taking so looking again looking at the complaint what the appellant put into the complaint they're just inherently inconsistent with each other and contradictory as the district court found and even if you get past that they just don't rise to the level of a 1981 claim where the pool attendant there's no allegation or inference that she has any type of authority to deny the appellant the right to to contract or to be there and she doesn't take any type of action she doesn't recommend there's no allegation that she recommends that they be removed this is solely the manager's decision and the difference between when the manager who knows that the appellant is arab knows what his race is when he's talking to him and then 15 or 30 minutes later the only difference between the favorable treatment and then the eviction is that he learns that he was engaging in inappropriate behavior and so that does not satisfy the cat's paw theory i don't think it satisfies a vicarious liability theory and it certainly doesn't satisfy intentional discrimination or but for which is really what this case is all about would a non-arab and the appellant's position have been evicted from the hotel based on these facts when a manager learns that they're engaging in inappropriate behavior i believe that the answer is yes and so because he cannot satisfy but for based on the the four corners of the complaint as a matter of law that is why the district court properly found that he can't state a claim dismiss the complaint with prejudice they haven't i even put it in the brief asking well what would you plead differently uh your honor uh judge marcus asked uh playing it what would you plead differently he hasn't he couldn't answer that question because the facts are going to remain the same this is the third iteration of the complaint where the facts essentially remain the same and they don't arise to the level of a 1981 violation we believe that the manager engaged in a a proper investigation of this again the key point is that you're just not being influenced by the allegedly biased person you have to get both sides and then you make a credibility credibility call you make a decision that's what the manager did in this case and that's not a factual issue that's squarely within the four corners the court the district court did not go outside the four corners and each of these uh facts in the light most favorable to the to the plaintiff show that race played no role whatsoever in the manager's ultimate decision to evict it was for a non-racial reason and so for that reason unless the court has any further questions we respectfully request that the district court's order of dismissal be affirmed thank you mr andrew i i i oh judge prior just i want to go back if i can for one second go ahead prime counsel that you have um do you read the sims case at sims v m v m inc 2013 case 704 f third 1327 to say that in a case that requires but for causation the cat's paw theory cannot be used it is necessarily incompatible with but for causation i do i do and that's that page it would be 1337 of the opinion and i'll just read the part that i would rely on real quick because the adea requires a but for link between the discriminatory animus and the adverse employment action as in the adverse employment decision we hold that staub's proximate causation standard does not apply to cat's paw cases involving age discrimination and and so holding we follow the same holding by the 10th circuit and simmons and so i read that as the court before that the court in sims distinguishes staub which is the united states supreme court case which a lot of parties rely on for cat's paw and they distinguish the type of statutes that are at issue there and and staub that involved a motivating factors statute staub i mean uh sims involved a but for statute and so the court laid out its reasoning as to why it did not believe that cat's paw applied and so i think that uh that uh section that i read supports the position that cat's paw does not apply to a but for statute you've answered my question thank you thank you and if there are no further questions then i'll rest on my brief thank you thank you rebuttal just marcus let me let me start with the last point uh sims stands for the unremarkable proposition that uh proximate cause is not approximate causation standard is not appropriate but for cause it but for causation cases no issues with that i agree with that that's all stop said that's all sim said it sims was authored by judge anderson uh and judge anderson was also on the panel of of godwin which which is the my strongest case which in godwin a summary judgment was actually reversed based on uh cat's paw in a in a um in a but for causation case judge anderson was also on the panel with judge newsom and blash versus city of of hoxsonville uh which was issued just in april 2021 just a few weeks ago also uh reversing on on a uh on a um a cat's paw but for but but let me get back to to the point so finally we have narrowed down the factual elements that comprise investigation as my colleague said uh number one that um the information was reported back to the manager by a security guard and number two is paragraphs 28 29 where my clients met with the manager before that is the universe and all the pleadings and all the proceedings in lower court and in this court those are the investigations so let's take the first one first the reporting back again as as your honor pointed out paragraph 42 uh this was and the the complaint repeatedly said this is just parroting that wasn't an investigation uh all the security guard did was just parrot back as i pointed out to the court it was as much like a walkie-talkie the security guard was was just acted as a walkie-talkie as if or the phone as if mine had called judy and asked all the security guard was transmit the information as to uh as to my clients um speaking with mine and him acting positively as was pointed out that happened before anything ever came up with judy my clients go over to mine and say uh you know that judy said this day she's acting on ice there was nothing racial about it they didn't know there was accusations about vomiting in the pool or acting appropriately all all he felt was incredible hurt and embarrassment and shame treated differently the way she was adam said you don't belong here he went to complain about that robert mine didn't ask any any questions my clients didn't know of any issues to even address with the manager that's not an investigation so again so bottom line we're left with here is where was the investigation uh investigation is critical to cut the the causal link between judy and mine if there's no investigation then and if the court wants to use cat's paw or not and some courts use other words for it but without that with that break in the causal link then judy's animus transfers over to robert there was no investigation as my colleague pointed out this all happened in a matter of 15 or 20 minutes it's pretty quick and as as the second amendment complaint points out robert month's family came to visit him and we only know that because that's the part we see on the video i assume it's a family because there's a lot of hugging and affection going on we see in the foreground but again there was no investigation and and counsel said um the only difference in the 15 minutes was this this was this investigation again robert mone was busy with his kids there was no investigation he didn't know he couldn't articulate anything as in the second amendment complaint and and more importantly would an arab be treated the same way if they had gone through the same would a non-arab have been treated the same way i know that that's literally the question behind this case um the fact is that our position is that this never would have come up if he was a non-arab judy would have never said those things about vomiting in the pool again these are objective facts either it happened they didn't either other customers complained about my client's fiance taking a bikini off or they didn't happen i don't know but it's not in second amendment point i i want to point out in the oral argument um in the transcript this is on page 29 and line 19 the court said something uh to me which i think really highlights this case the court said well it could obviously mean you don't look like you don't like arabs or it could mean you don't like look like you belong here because i don't think you look like you can afford this hotel those are two very reasonable explanations and the court just decided the latter without really considering the former and and our position is the court should have uh accepted the former especially at this stage giving all inferences uh to the to the non-moving party and and to make a quick point about the the the what what could we have amended uh because the complaint was dismissed with prejudice without leave to amend number one the first amended complaint was done before uh any order the second amended complaint was was drafted to uh address the shotgun pleading so cat's paw was only addressed one one time and the court specifically stated on page eight of its order that while plaintiff makes the conclusory allegation if that's an issue then afford afford us the opportunity to to plead more factually i'm not suggesting adding new facts or changing the facts but if it's conclusory then then then give us the opportunity to to replay that um and again the the overwhelming uh in fact it's not even overwhelming it's almost literally every one of these cases comes up on summary judgment these are extremely fact-specific and and may i suggest that that is why almost all of these cases are unpublished opinions because they're so fact-specific even sims sims was a case where it was an age discrimination case where the the business had to release two people they had for budget reasons so it wasn't like someone just decided to uh to fire someone and the question was there uh was age a factor these are really fact-specific cases um the the whether this was discrimination or not again um the courts have suggested that we we can't look to latent bigotry we can't ask for key words here right uh bigotry very often comes out in subtle subtle ways subtle manners behaviors attitudes because this is the retail context we don't have a background we don't have uh a mosaic so to speak of facts uh and we'd ask the court to reverse the lower court's addition um decision and order the court to um enter an order denying the motion dismissed thank you your honors thank you counsel for your help with this case court will now be adjourned until 9 a.m tomorrow morning